Chief Justice Bibb
delivered the Opinion of the Court.
Meredith Payne, the executor, named in the, last will and testament of George Payne deceased, applied to the county court of Washington, offered, evidence of the execution of the will, of the loss thereof, since the testator’s death, of its contents, by a substantial copy produced, and applied for letters, of probate, Richard Payne opposed the probate, and the court being divided, the application was^ therefore, not granted; from which Meredith Payne, the executor, has appealed.
The due publication of the testator’s will in writing, made and attested according to the solemnities required by the statute, is proved by the two attesting witnesses; and the sanity of the testator improved not only positively by,the witnesses, but by the means adopted by the the testator in equalizing, by his own judgment, and the aid of the two attesting witnesses, called to assist him in the valuation, at the drawing of the will.
Proof that the will was purloined from the depositary.
Copy offered in the county court,now offered here to be recorded.
Interests of legatees and devisees vests the instant of the testator's death and are not lost by the fraudulent or accidental destruction of the will before probate.
*423 After it was executed, it was delivered by him to one of the subscribing witnesses, for safe keeping, where it remained until after the testator’s death.
That George Payne had made and published his will before his death, was known to his family, and that it had been deposited with one of the witnesses. On application of one of the sons of the testator, the depositary made a copy, examined it with great care, with the assistance of the person whom the son had sent for it, who deposes to the repeated examinations by himself and the depositary, and to the delivery thereof to the appellee. In a short time afterwards, on the application of another of the sons, the depositary being about to make another copy, discovered that it had been purloined, and under circumstances which induce a belief that the will had been abducted and secreted or destroyed by the procurement of some one, dissatisfied with the provisions of the will, but by whom it is not known.
Richard Payne, who contests the will, has refused to bring forward the copy delivered to him, although called upon by the depositary, very soon after the loss of the original, as well as at the county court, when probate was applied for. The copy offered to the county court, and now to this court, is the best evidence which is in the power of the executor, and is satisfactorily proved to be a substantial, if not a literal copy of the original.
The fact of due publication of the will according to the statute, with the requisite solemnities to make it effectual to pass the real and personal estate, according to the legacies and devises contained in it, is proved beyond doubt. That the testator ever revoked, or even intended to revoke, is not suggested by any colour of evidence. At his death the will was in existence, fair, uncancelled, unobliterated and of full effect.
In law, upon the death of the testator, the interest of the executor was vested, and most of his powers also, before probate of the will; the rights and interests of the legatees and devisees were also completely vested at the instant of the testator’s death *424 and before probate. The after Toss or destruction of the will by accident, or fraud, cannot destroy and divest those vested rights and interests. In this, Wentworth, Swinbourne, Toller and Powell, adjudged cases, ancient and modern, all agree. The rights and interests of the legatees and devisees are no more lost nor destroyed, than the rights of a creditor by the accidental loss of his bond, or of the purchaser by the casual loss of his deed. The devisees take as purchasers under a will.
Objections to the jurisdiction stated.
Jurisdiction of the county courts is not ministerial, but judicial —and is unlimited as to the nature and matter of the controversy.
Probate shall be granted by one county court, as where testator resided, and that shall have effect throughout the state.
The counsel for the appellee do not deny the effect of the will, if it were duly made and published, nor pretend that the loss of it after the testator’s death, can destroy its effect. But they question the power of the county court, as a court of probate, to take the proof, and act upon the subject; they insist that the matters of controversy are withdrawn from that jurisdiction and transferred to the court of chancery.
By the statute of this state it is declared “that the several county courts shall have power to hear and determine all causes, matters, suits and controversies testamentary, arising within their respective jurisdictions, and to examine and take the proof of wills, and grant certificates thereof,” &c. 2 Dig. 1244, sect. 10. The power “to hear and determine, is a judicial, not a ministerial power. And the grant of that power over testamentary controversies is without limit or restriction, as to the nature or matter of such controversy.”
The after provisions of this statute, regulate the question of jurisdiction so as to give to some one county court of the state, complete authority over the subject, and to make the probate granted in any county, co-extensive with the state, so as to avoid the inconvenience and expense of probate in different counties, they give also to the same courts power to grant letters of administration. According to the rule given, the jurisdiction belonged to the county court of Washington, because, the mansion house, residence and death of the testator, were i,n that county.
History of th jurisriiction of the England*1 °
Wills containing devises of land.
. The scope of the powers ánd jurisdiction thus conferred tnáy be better understood by reference to the history of the idrisdicfion and powers cxer-ciseu by the courts, ecclesiastical and temporal, m testamentary caiises, matters, suits and controver-sics in England. That history will be found in the case of Marriott vs. Marriott, 1 Stran. 666. It appears that the Bishop arid Sheriff sat together in. the county courts, by the laws of King Edgar; and that the probate of testaments was in the county courts. . William the conqueror separated the ecclesiastical courts from the civil, Under a charter of Henry the first, the ecclesiastical jurisdiction over testamentary matters crept in, under colour of devises to pious uses; in the time of Bichard the second, when he was in confinement, the clergy obtained from bina a confirmation of ecclesiastical im-. munities, and these were confirmed by the Pope. Thenceforth the ecclesiastical courts commenced with their method for the publication of wills. Notwithstanding this, the jurisdiction of county courts continued as to wills, and was acknowledged to be h. matter riiixti fori; but afterwards, in the time of Richard the second, the clergy got the right to publish the law of William the conqueror, and confirm it, that no matters of ecclesiastical cognizance should íae transacted in the county courts. Thenceforward the clergy, uiider the constructions of ecclesiastical jurisdiction, exercised the whole jurisdiction over wills. The jurisdiction of the comity courts over wills was abandoned, and the spiritual courts have authority and cognizance to receive the probate of wills, to the exclusion of all others except the. courts baron. The seál of the ecclesiastical court authenticates the will conclusively, as to goods and chattels, there being no way to record a will relating td chattels in the temporal courts.
But with respect to a will of lands, the ecclesiastical courts have no jurisdiction. And if a will of goods and chattels, and of lands also, be proved in the ecclesiastical court, it is final and conclusive as to the goods and chattels, but does not conclude as to the real estate; so that in a contest between the *426 heir and devisee, the will must be proved again in the temporal court.
Thus in England the jurisdiction to bear and determine controversies about wills is referred to the ecclesiastical courts as to goods and chattels, and to the temporal courts as to disputes between devisee and heir. Even between the ecclesiastical courts, if the testator left bona notablia, in different dioceses, a probate in one diocese is not sufficient, the executor must prove the will in both, or in the metropolitan or prerogative courts of the provinces of Canterberry and York. So if there bo bona notabilia in those several provinces, the Arch Bishops shall each grant a probate in their respective provinces.
Such are the conflicting claims to jurisdiction between the different dioceses and provinces, and between the ecclesiastical and temporal courts in England. By reference to this confliction of jurisdictions, and the perplexities and expense and inconveniences attending probates in different places and in different courts, we are the better enabled to understand the extent of jurisdiction conferred on the county courts by the statute of Virginia, from which ours has been copied.
The expressions “all causes, matters, suits and controversies testamentary,” carry along with them the whole jurisdiction as to probates, which had been so perplexingly divided in England, between the courts ecclesiastical and temporal. This is rendered more manifest by the eleventh section, which gives the right to contest the validity of a will, admitted to record by the county court, to any person appearing within seven years thereafter, by bill in chancery.
In England, a dispute between heir and devisee, is a testamentary cause, whether the suit is at law or in chancery, depends on the matter and cause of controversy, whether for imputed insanity, or concealment. or loss of the will, or fraud, or want of due solemnity of publication. Whether a court of chancery takes cognizance, and sends the matter to be tried at law on the issue of devisavit vel non, or *427 retains the cause upon some matter of jurisdiction, inherent, and solely appropriate to the court of chancery, or whether the trial is in a court of law, in a suit originated there; whether the will be lost or extant, the controversy is testamentary. So in. the ecclesiastical court, whether it be a question of sanity or insanity, or of due publication by a sane person; whether it be upon a will lost or destroyed, or about one in being and produced, the controversy is a cause, suit and matter testamentary.
Here the county court has all the jurisdiction of wills, both as to personalty and lands, exercised in England by the courts ecclesiac and of equity.
Testamentary jurisdiction of the county court attaches the instant of the testator’s death, and cannot be divested by the destruction of the paper containing the will.
Elver since the enacting of the statute of Virginia, from which ours is copied, a will as to the personalty and realty, proved and admitted to record in the county court, has been received, throughout the state, whose court granted the probate, as authentic, until contested and set aside by bill in chancery. The jurisdiction of the ecclesiastical courts and of the courts of common law and of chancery, as exercised separately and respectively in England are blended and amalgamated into the jurisdiction of the county courts, according to the regulations of the statute above quoted.
The case of a lost will, it is argued fox the appellee, is an exception to the jurisdiction of the county court. That it is the production of the writing the exhibition of the very paper claimed as the will that gives the jurisdiction, that the loss or destruction, changes the jurisdiction from the county court to a court of chancery.
This is a mistake. The jurisdiction of the county court does not flow or ebb, with the full or wane of the evidence touching the will. It is antecedent to the production of the paper. Its jurisdiction is to grant probate in case of a testament, or letters of administration in case of intestacy. It is to be determined by reference to the mansion house or residence of the testator, the lands devised, or by his death, or his estate, according to the rules and gradations fixed by the statute. It begins before any will is offered, it is competent to act in limine, and compel the production of a suppressed writing, supposed to he a will.
References to prove the county courts have jurisdiction after the loss of the will to hear the original proved, and record a copy.
The loss of the paper may confer concurrent jurisdiction on a court of equity, which without such loss, would not belong to it; but it cannot confer an exclusive jurisdiction. The controversy about a will, whether lost or not lost, is a cause and suit testamentary, which the county court has jurisdiction “to hear and determine.”
As the loss of the paper is, per se, no loss of the rights and interests under it, if a genuine and valid will before the loss, a controversy in which it becomes necessary to prove the making and publication of the will, and then its contents, is still a cause matter, suit and controversy testamentary.
In Toller’s law of executors, p. 15, it is said, “if a will be destroyed in the lifetime of the testator, but without his knowledge, it will be substantiated on satisfactory proof thereof, and of its contents,” and the adjudged case is there referred to. The same author, p. 71, treating of “probate under special circumstances,” says, that probate of a will lost, will be granted upon proof of its execution and contents, and existence after the testator’s death, for which he cites, 4 Burn. Eccl. L. 209; “so, whore the testator bad delivered bis will to A. to keep for him, and four years afterwards died, when the will was found gnawn to pieces by rats, and in part illegible, on proof of the substance of the will by joining the pieces, and the memory of witnesses, the probate was granted,” for this he cites Went. off. Exrs. Suppl. 215, Wilmot vs. Talbot, 3 Har. and McHenry 2; In Swinburne on wills, Part VI, Sect. XIV, p. 450, it is said, that probate of a will which is lost, may be granted on proof of the contents, The case of Legarre and wife vs. Ash and others, 1st Bay’s repts. 459, was of a lost will established upon proof of its contents.
In the case of Happy’s will, 4 Bibb 553, the question came before the court upon a writ of error to the judgment of the county court. This question was discussed, and probate upon the copy granted. Upon a review of that case we age satisfied that it is properly settled
Wills proved in the county court may be afterwardd contested in equity or here.
Judgement for the comproved, to be recorded here.
Mandate.
Rdrdfn and Crittenden, for the will; Pope, cos
The proceeding in the county court by calling the witnesses to depose in open court, is to the full as great a security against, fraud and perjury as the proceeding upon the same matter in chancery would be. It is but a struggle for jurisdiction. Despatch, convenience, and public policy are in favor of the county court. By resort to that tribunal as a court of probate, competent to hear all parties and conclude all, multiplicity of suits is avoided, the decision the one way or the other places the matter on a stable foundation. With the appellate power of this court, which may be speedily called for, and the right to absentees to apply to a court of chancery, Within seven years, saving the rights of infants &c. the subject of controversy is as well guarded, as by a resort to a court of chancery in the first instance.
We have to acknowledge the ability and research displayed by the counsel on both sides, in discussing this question, and the assistance thence derived by the court in the performance of their duties.
Upon the matters in controversy, it is considered by this court, that the judgment and decision of the county court of Washington, be reversed and annuled; that the paper produced herein, as the substance and copy of the last will and testament o£ said George Payne deceased, be recorded in this court, as sufficiently proved to be a fair and substantial copy of the last will and testament of said George Payne deceased, the original being lost, but the due execution and publication thereof, has been fully established in this court; that the said paper, as so, established and recorded, be certified to the said county court, with directions to record the same, as the last will and testament of said George Payne deceased, and to take such further orders thereon, as appertain to the matters thereof, and as required by law.
It is farther considered by the court, that the appellee pay to the appellant his costs, in this behalf expended.